MICHAEL, Circuit Judge,
concurring.
I concur in the judgment and in all of the majority opinion except part III.A. I write separately to explain my reason for concluding that Johnson has not presented any direct evidence that Toys “R” Us discriminated against her because of her race. Johnson argues that the statement of Wally Peters, a store manager, that the gift cards were deactivated because Johnson “looked suspicious” is direct evidence of discriminatory intent. Johnson, however, presents no evidence that Peters played any part in the decision to deactivate the gift cards, as part III.B of the court’s opinion explains. Because Peters is not tied to the deactivation of the cards, I agree that his statement that Johnson “looked suspicious” is not direct evidence of Toys “R” Us’s intent to discriminate.
I do not agree, however, that Wally Peters’s statement would be too speculative to allow a jury to infer racial animus on Peters’s part if his intent was relevant. Johnson testified in her deposition, “I spoke to Wally. I don’t know his last name. And he said that I looked — I asked him why were the cards deactivated, and he said I looked suspicious.” J.A. 124. Johnson further testified:
My conversation to Wally was why were the gift cards deactivated and, in turn, he said you looked suspicious. I said, What looked suspicious? And then he said that they were going to give me a $75 purchase, one item or less. I said— because I had asked him what looked suspicious and that is when he just changed the subject and said, We will give you $75, one item or less.
J.A. 158-59. There is no direct explanation in the record as to why Peters believed that Johnson looked suspicious. However, when Johnson, an African-American, pressed Peters to tell her why she looked suspicious, Peters quickly changed the subject and offered Johnson seventy-five dollars in free merchandise. In addition, Peters’s explanation to Johnson that the cards were deactivated because she “looked suspicious” contradicts Toys “R” Us’s explanation that the cards were deactivated because the transaction might have been fraudulent. Peters did not make an explicit reference to John *11 son’s race, but that would not have been necessary. Johnson could have avoided the McDonnell Douglas framework by offering sufficient direct or circumstantial evidence of discrimination. Goldberg v. B. Green & Co., 836 F.2d 845, 847-48 (4th Cir.1988). If the evidence had tied Peters to the deactivation of the cards, a jury could have inferred an intent to discriminate from Peters’s reference to Johnson’s suspicious appearance and other circumstantial evidence.
Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir.2000), does not require the conclusion that Peters’s “you looked suspicious” statement is too speculative to be evidence of discrimination. The plaintiff in Hawkins alleged that her supervisor created a racially hostile work environment and terminated her because of her race. In Hawkins the supervisor repeatedly criticized the employee, and that alone, we said, did not allow an inference of racial animus. Id. at 277, 280-81. We characterized the criticism as an “ordinary occurrence[ ] in a workplace setting,” and “[w]e deeline[d] to impute a racial character” to it. Id. at 281. Peters’s statement is more probative of discriminatory intent for several reasons. It refers to Johnson’s appearance, and it contradicts Toys “R” Us’s later explanation. Furthermore, it is surely unusual for a store manager to tell a customer that the store deactivated her gift cards because she “looked suspicious” and then quickly change the subject, offering free merchandise, when the customer presses him to explain his statement. Again, because Peters had no role in the deactivation of the cards, his statement about Johnson is not evidence that Toys “R” Us discriminated against her when it deactivated the cards she purchased.